UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEON JOHNSTON,

    Plaintiff,

v.                                        CASE NO. 8:23-cv-617-SDM-AEP

DEPUTY SEAN M. CARLSON, et al.,

    Defendants.
_____/

**ORDER**

    Subject to a "Final Judgment of Injunction for Protection Against Domestic Violence" enjoining him to have "no contact" with his wife, Deon Johnston on two occasions attended the same church at the same time as his wife, who regularly attended the church with their minor children. On each occasion a deputy sheriff arrested Deon. In a one-count complaint (Doc. 1), Deon claims under 42 U.S.C. § 1983 that Deputies Sean Carlson, Melanie Stickney, and Jose Maldonado deprived Deon of his rights secured under the Fourth Amendment by arresting Deon without probable cause to believe that Deon had violated the injunction. The deputies move (Doc. 14) to dismiss the complaint as a shotgun pleading and for failure to allege facts overcoming each deputy's qualified immunity. Deon Johnston responds (Doc. 18) in opposition, and with leave the deputies reply (Doc. 27) in support of dismissal.

## BACKGROUND[1]

On November 1, 2022, Deon's wife, Nicole Johnston, petitioned the Circuit Court of the Sixth Judicial Circuit for a domestic-violence injunction against Deon. (Doc. 12 ¶¶ 8–9)  After notice to Deon and a hearing, the circuit judge entered an injunction finding that Nicole "is a victim of domestic violence and has reasonable cause to believe that [she] is in imminent danger of becoming a victim of domestic violence by [Deon]." (Doc. 12-1 at 1)  The injunction entitles Nicole to exclusive possession of her residence and prohibits Deon's committing further domestic violence by any "intentional unlawful threat, word[,] or act[.]" (Doc. 12-1 at 2–4)

In a section titled "No Contact," the injunction states that Deon (1) "shall have no contact with [Nicole]," (2) "shall not directly or indirectly contact [Nicole] in person by mail, e-mail, fax, telephone, through another person, or in any other manner," (3) "shall not contact or have any third-party contact anyone connected with [Nicole's] employment or school to inquire about [Nicole] or to send any messages to [Nicole]," (4) "shall not go to, in, or within 500 feet of [Nicole's] current residence," and (5) "may not knowingly come with 100 feet of [Nicole's] automobile at any time." (Doc. 12-1 at 2-3)  Although the no-contact section begins by prohibiting contact "unless otherwise provided in this section," the field for "other provisions regarding contact" remains empty. (Doc. 12-1 at 2–3)

---

[1] The complaint alleges the following facts, which are presumed true and construed in the light most favorable to Deon.

*The December 4, 2022 arrest by Deputy Carlson*

On December 4, 2022, and about two weeks after the injunction, Deon attended service at Harborside Christian Church. (Doc. 12 ¶ 21) After Deon arrived at the church, Nicole, who had arrived at the church before Deon, called law enforcement and reported that Deon's presence at the church violated the injunction. (Doc. 12 ¶ 23) Although Deon was unaware of Nicole's presence at the church, Nicole often attends Harborside Christian Church with her minor children. (Doc. 12 ¶¶ 17, 22)

After Deputy Carlson arrived at the church, Nicole furnished a copy of the injunction for Deputy Carlson to review. (Doc. 12 ¶ 24) After reviewing the injunction, Carlson informed Nicole that nothing in the injunction appeared to prohibit Deon's presence at the church. (Doc. 12 ¶ 25) Although Nicole understood from the Pasco County Sheriff's Office that the injunction prohibited Deon's presence within 500 feet of Nicole, Deputy Carlson explained that the injunction is "very very specific" that Deon cannot come within 500 feet of Nicole's "residence" or knowingly come within 100 feet of Nicole's automobile. (Doc. 12 ¶ 26) Deputy Carlson consulted Deputy Stickney, who arrived at the church after Deputy Carlson. (Doc. 12 ¶ 27) Deputy Stickney relied on Deputy Carlson's summary of the injunction but declined to review the injunction. (Doc. 12 ¶ 28)

Ultimately, Deputy Carlson arrested Deon for violating the injunction and transported him to the Pinellas County Jail, where he remained overnight until he could appear before a judge the next morning. (Doc. 12 ¶ 30) Deputy Carlson

signed the arrest affidavit, which alleged that Deon knowingly violated the injunction because Deon attended the church "[d]espite knowing the church . . . is [Nicole's] place of worship" and despite knowing that Nicole habitually attended "the same service, on the same day, at the same time." (Doc. 12 ¶ 28) As the basis for the charge, the arrest affidavit cited Section 741.31, Florida Statutes, titled "Violation of an injunction for protection against domestic violence." (Doc. 12-2 at 1) The day after his arrest, a county judge determined that probable cause supported the arrest and released Deon on his own recognizance. (Doc. 12 ¶ 31; Doc. 12-2 at 1) About two weeks after his release, the state attorney filed a "No Information" concluding "that the facts and circumstances revealed do not warrant prosecution at this time." (Doc. 12-3)

*The February 19, 2023 arrest by Deputy Maldonado*

On February 19, 2023, and about two months after the first arrest, Deon again attended service at Harborside Christian Church. (Doc. 12 ¶ 33) This time, Deon arrived before Nicole and sat in the middle of the third row. (Doc. 12 ¶ 36) Sometime later, Nicole arrived and sat about ten rows behind Deon. (Doc. 12 ¶ 37) Eventually, Nicole left the church and called the police. (Doc. 12 ¶ 39) Deputy Maldonado, who was not present during the first arrest, arrived at the church, arrested Deon, and transported him to the Pinellas County Jail, where Deon remained overnight until he could appear before a judge. (Doc. 12 ¶ 44) Deputy Maldonado signed the arrest affidavit, which, like Deputy Carlson's affidavit, alleged that Deon knowingly violated the injunction by "being at a place where the petitioner was

located" and by "ma[king] visual contact with [Nicole]" while inside the church. (Doc. 12-4 at 1)  Like Deputy Carlson's affidavit, Deputy Maldonado's affidavit cites Section 741.31, Florida Statutes, as the basis for the arrest. (Doc. 12-4 at 1)  The day after his arrest, a county judge again determined that probable cause supported the arrest and released Deon on his recognizance. (Doc. 12-4 at 1)  About two weeks after his release, the state attorney again filed a "No Information" concluding "that the facts and circumstances revealed do not warrant prosecution at this time." (Doc. 12-5 at 1)

On March 20, 2023, Deon sued (Doc. 1) the deputies under Section 1983 and included a claim against Nicole, to whom Deon remains married despite the pendency of a dissolution of marriage, for defamation and malicious prosecution.  After Nicole appeared *pro se* and moved to dismiss, Deon stipulated (Doc. 11) to her dismissal and amended (Doc. 12) the complaint to sue the deputies only.

## DISCUSSION

In one count, Deon claims under 42 U.S.C. § 1983 that each arrest deprived him of his right under the Fourth Amendment to remain free from unreasonable search and seizure.  Moving to dismiss, the deputies argue (1) that the one-count complaint constitutes a "shotgun pleading" and (2) that the complaint fails to overcome each deputy's qualified immunity.

1. Shotgun pleading

The deputies argue that by suing about the two arrests under one count the complaint impermissibly comingles separate causes of action accruing months apart

- 5 -

and committed by different deputies. Under *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015), a complaint constitutes a "shotgun pleading" and violates Rule 8 if, among other things, the complaint fails to separate "into a different count each cause of action or claim for relief." A "cause of action" is "a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Black's Law Dictionary* (11th ed. 2019).

Although he attacks each arrest on the same legal basis (the Fourth Amendment's prohibition against unreasonable search and seizure), Deon contends that each arrest separately entitles him to relief. Because each arrest allegedly "giv[es] rise to one or more bas[is] for suing," Deon should claim relief for each arrest — on each occasion effected by a different deputy — by a distinct count. Although *Weiland's* prohibition against shotgun pleading principally serves to ensure that the adversary "can discern what [the plaintiff] is claiming and frame a responsive pleading," the parties' briefing confirms that the deputies comprehend Deon's claims and can adequately frame a response. But the inclusion of separate claims for relief — one for the December 4 arrest by Deputies Carlson and Stickney and one for the February 19 arrest by Deputy Maldonado — creates the possibility of confusion. In a single count, a plaintiff can sue two defendants for one incident or one defendant for two incidents but should not sue one defendant for one incident and another defendant for another incident.

Although distinct from the types of shotgun pleadings most repudiated by *Weiland*, such as a complaint that fails to identify the legal basis for relief or fails to distinguish among defendants, Deon's complaint nonetheless constitutes a shotgun pleading. Thus, the complaint warrants amendment. However, no barrier to comprehension prevents this order's assessing whether the complaint states a claim for either arrest.

2.   Qualified immunity

Section 1983 permits a suit for money damages against a person who under color of state law deprives the plaintiff of a right secured by federal law. Deon claims that each arrest deprived Deon of his rights secured by the Fourth Amendment, which protects against "unreasonable searches and seizures," among other things.[2] A search or seizure is unreasonable if the arresting officer lacks probable cause, which exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992).

Because Deon sues the deputies in their individual capacity under Section 1983, the deputies enjoy qualified immunity, which "protects government officials performing discretionary functions . . . from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person

---

[2] Under the Fourteenth Amendment, the Fourth Amendment applies to state actors. *Brown v. City of Huntsville*, 608 F.3d 724, 734 n. 15 (11th Cir. 2010).

would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). To defeat a deputy's qualified immunity, Deon must allege facts plausibly showing that the deputies lacked "arguable probable cause" to arrest him. *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001); *Von Stein v. Brescher*, 904 F.2d 572 (11th Cir. 1990) ("Actual probable cause is not necessary for an arrest to be objectively reasonable.").

The standard of arguable probable cause is objective. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the [defendants] could have believed that probable cause existed to arrest." *Scarbrough*, 245 F.3d at 1302. The deferential standard of arguable probable cause "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). If a deputy makes a "reasonable mistake in the legitimate performance of [the deputy's] duties," the deputy is entitled to qualified immunity. *Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019).

Qualified immunity insulates a deputy from liability for both a reasonable mistake of fact and a reasonable mistake of law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). For example, if a deputy reasonably but mistakenly believes that an innocent person fits a description in an arrest warrant, probable cause remains despite the mistake of fact. *See, e.g., Williams v. City of Montgomery*, 839 Fed. App'x 356 (11th Cir.

2020).³ On the other hand, if a deputy accurately comprehends the facts but "the law turns out to be not what was thought," probable cause exists if the mistake of law was reasonable. *Heien v. North Carolina*, 574 U.S. 54, 61 (2014). For example, if a deputy arrests a driver under the reasonable but mistaken belief that driving with only one operational brake light violates a state statute, probable cause remains even if careful study might reveal that the statute only prohibits driving without any operational break light. *See, e.g., Heien*, 574 at 61, 66 (recognizing that an officer in the field must "make a quick decision on the law.").

In this action, no party argues that a deputy labored under a mistake of fact. The complaint conveys that each deputy ascertained correctly that Deon was subject to the domestic-violence injunction (Doc. 12 ¶ 10), that Deon knew that Nicole regularly attended the church (Doc. 12 ¶ 17), and that both Deon and Nicole were in the church at the same time. (Doc. 12 ¶¶ 23, 37). The parties disagree about whether Deon's presence in the church amounted to a crime authorizing his arrest. Specifically, the parties disagree about whether Deon violated Section 741.31, Florida Statutes.

Under Section 741.31(4)(a), a person commits a misdemeanor of the first degree if the person "willfully violates an injunction for protection against domestic violence by" any of eight actions specified in items (4)(a)(1)–(8). The parties focus on

---

³ Of course, the deputy is entitled to qualified immunity only if the mistake of identity is reasonable. *C.f. Rodriguez v. Gomez*, 2022 WL 18110814 (S.D. Fla. Dec. 12, 2022).

item (5), which in pertinent part prohibits "[g]oing to, or being within 500 feet of . . . a specified place frequented regularly by the petitioner."

The parties advance competing interpretations of subsection (4)(a)(5). The deputies argue that subsection (4)(a)(5) prohibits a person subject to a domestic-violence injunction from entering within 500 feet of any place frequented regularly by the victim. Because the complaint alleges that Nicole regularly attended the church, the deputies argue that Deon violated subsection (4)(a)(5). Deon, on the other hand, argues that the word "specified" restricts subsection (4)(a)(5) only to those places specified in the domestic-violence injunction. Because the domestic-violence injunction specifies Nicole's residence and automobile but not the church, Deon argues that no violation of subsection (4)(a)(5) has occurred.

Deon probably proffers the better reading of subsection (4)(a)(5). To interpret subsection (4)(a)(5) to mean "any place frequented regularly by the petitioner" eliminates the word "specified" from the subsection. Although the statute omits to illuminate the meaning of "specified," the context of the statute, a prohibition against the violation of a domestic-violence injunction, strongly suggests that the injunction must specify the place frequented regularly. Research reveals no decision of a Florida court interpreting subsection (4)(a)(5).

But even if the deputies' interpretation of the statute ultimately fails to persuade, qualified immunity requires only that the deputies had "arguable probable cause" to believe that the defendant committed a crime. A deputy charged with assessing criminal conduct in the field lacks "the luxury . . . of being able to fully

- 10 -

consider the statute in the calm of . . . chambers." *Mahone v. Georgia*, 2022 WL 2388426, at *3 (11th Cir. 2022). In determining probable cause, "law enforcement officers are not charged with knowing legal technicalities and nuances, but with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Hutton v. Strickland*, 919 F.2d 1531, 1541 (11th Cir. 1990) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

In this action, the deputies confronted a circumstance in which Deon, an adjudicated perpetrator of domestic violence against Nicole, entered a church that Nicole attended regularly. Although the injunction specified only Nicole's place of residence and automobile, the domestic-violence injunction both contains a general prohibition that Deon "shall have no contact with Nicole" and authorizes law enforcement "to arrest [Deon] without warrant pursuant to section 901.15, Florida Statutes, for any violation of its provisions . . . ." (Doc. 12-1 at 2, 10) A reasonable officer equipped with this information could — whether rightly or otherwise — infer reasonably (1) that by attending church Deon violated the domestic-violence injunction's general "no contact" prohibition and thus violated Florida's criminal law or (2) that Deon violated subsection (4)(a)(5). Although prolonged debate might resolve either that Deon's presence in church amounted to no violation of the general "no contact" prohibition or that Deon's violation of the "no contact" prohibition amounted to no violation of Florida's criminal law, the deputies mistake was at least reasonably

arguable.[4]  To conclude otherwise would force a deputy in the field to choose either to risk civil liability or to ignore both a likely violation of a domestic-violence injunction and a likely violation of Florida law.  Such a conclusion would deprive a deputy of the "breathing room" necessary to protect the public.

## CONCLUSION

The deputies motion (Doc. 14) to dismiss is **GRANTED**, and the complaint is **DISMISSED** for failure to state a claim.  Deon may amend the complaint not later than **JULY 31, 2023**.[5]

ORDERED in Tampa, Florida, on July 17, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[4] Also, after each arrest a neutral and detached magistrate determined that probable cause supported the arrest. (Docs. 12-2 and 12-4) Although in each instance the state attorney ultimately decided not to prosecute, "the fact that the state attorney's office dropped the charges . . . 'is of no consequence in determining the validity of the arrest itself.'" *Benoit v. City of Lake City*, 343 F.Supp.3d 1219, 1232 (M.D. Fla. 2018) (Howard, J.) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990)).

[5] Both Rule 1.610(c), Florida Rules of Civil Procedure, and Rule 65(d)(1), Federal Rules of Civil Procedure, require that every injunction "describe in reasonable detail" the acts restrained or required by the injunction. Commanding a reasonable description ensures that both an enjoined person and an enforcing officer, including both a police officer and a judge, will know from the outset and with confidence the scope of the injunction. To say the least, an injunction that relies on the term "contact" to "describe in reasonable detail" leaves too much unspecified. For example, if Bill promises to "contact" Betty when next Bill comes to town, is that promise fulfilled by silently occupying a pew in a large church in which Betty sits in some other pew. Or attending the same concert at an arena? Does "contact" include "within sight" such that, if Betty sits in Tropicana Field in St. Petersburg behind the Tampa Bay Rays' dugout and Bill sits in left field and if they can and do see one another (of, more to the point, if Betty spots Bill), a crime is committed? A more frequent example is Betty walking down a street with the children and seeing Bill walking toward her on the opposite side of the same street—and they see each other. A crime in Florida? "Contact," standing alone or as an "umbrella" term, is too ambiguous for an injunction. Reliance by judges on ambiguous terms, especially in a domestic-relations injunction, reliably creates more mischief, ill-will, misery, and expense for everyone the ambiguity plagues, including the United States district court.